UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

---

| UNITED STATES OF AMERICA | |
|---|---|
| v. | 19-cr-651 (SHS) |
| ALEXANDRU RADULESCU, | <u>OPINION & ORDER</u> |
| Defendant. | |

---

SIDNEY H. STEIN, U.S. District Judge.

      Defendant Alexandru Radulescu has moved for a sentence reduction pursuant to 18 U.S.C. § 3582(c)(1)(A). He is currently serving a 100-month term of imprisonment for access device fraud, conspiracy to commit access device fraud, conspiracy to commit wire fraud and bank fraud, and aggravated identity theft. For the reasons that follow, the Court denies Radulescu's motion.

      Section 3582(c)(1)(A), commonly known as the "compassionate release" statute, permits a court to reduce a defendant's sentence if 1) "extraordinary and compelling reasons warrant such a reduction"; 2) the factors set forth in 18 U.S.C. § 3553(a) weigh in favor of a reduction in sentence; and 3) the reduction "is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). [1] Recently amended section 1B1.13(b) of the United States Sentencing Guidelines provides guidance on what constitutes extraordinary and compelling circumstances, and governs the analysis of a motion for compassionate release. *See* U.S.S.G. § 1B1.13(b); U.S. Sent'g Comm'n, Amendments to the Sentencing Guidelines, 88 Fed. Reg. 28,254 (effective Nov. 1, 2023). *See also United States v. Laford*, No. 11 CR. 1032-07, 2024 WL 3778890, at *3 (S.D.N.Y. Aug. 12, 2024). Radulescu moves *pro se* for a sentence reduction pursuant to section 1B1.13(b)(1)(C) ("Medical Circumstances of the Defendant"), section 1B1.13(b)(4) ("Victim of Abuse") and section 1B1.13(b)(5) ("Other Reasons").

      "The defendant bears the burden of proving he is entitled to compassionate release." *Laford*, 2024 WL 3778890, at *2 (citing *United States v. Butler*, 970 F.2d 1017, 1026 (2d Cir. 1992)). Radulescu's motion fails both because he has not shown "extraordinary and compelling reasons" meriting a sentence reduction, and because any reduction

---

[1] A defendant must also exhaust his administrative remedies prior to bringing a motion for compassionate release. 18 U.S.C. § 3582(c)(1)(A). Radulescu has done so. (ECF No. 1498 at 4.)

1

would not be consistent with the section 3553(a) factors. The Court will address each reason in turn.

### I. Radulescu has Not Shown Extraordinary and Compelling Circumstances

Radulescu, who is 38 years old, contends principally that he suffers from a variety of medical conditions which are not being addressed adequately by the Bureau of Prisons ("BOP"). (*See* ECF Nos. 1498, 1536, 1537, 1540.) A defendant seeking a sentence reduction under the relevant guideline provision—U.S.S.G. § 1B1.13(b)(1)(C)—must show that 1) "[t]he defendant is suffering from a medical condition that requires long-term or specialized medical care"; 2) this medical care is "not being provided"; and 3) without that care "the defendant is at risk of serious deterioration in health or death." U.S.S.G. § 1B1.13(b)(1)(C).

With respect to the first requirement—that "[t]he defendant is suffering from a medical condition that requires long-term or specialized medical care"—Radulescu contends that he suffers from several health conditions, including "moderate to severe asthma, emphysema (COPD), bronchiectasis, heart condition and use of inhaled corticosteroids—which make him immunocompromised." (ECF No. 1498 at 10.) The medical records also reflect that Radulescu smoked more than one pack of cigarettes per day for a period lasting at least 14 years until recently. (ECF No. 1498 at 74; ECF No. 1498-1 at 42.) However, Radulescu nowhere demonstrates that the BOP is unable to care for an inmate with those conditions. Even assuming Radulescu's conditions require long-term or specialized care, the presence of a health condition requiring long-term or specialized care does not by itself establish an extraordinary and compelling circumstance warranting a sentence reduction. *See United States v. Rodriguez*, No. 12 CR. 790, 2024 WL 244379 (S.D.N.Y. Jan. 23, 2024) (defendant with COPD did not present extraordinary and compelling reasons warranting sentence reduction); *United States v. Royal*, No. CR TDC-09-0048, 2024 WL 1096583 (D. Md. Mar. 13, 2024) (same). Rather, courts that have ordered compassionate release for defendants with Chronic Obstructive Pulmonary Disease ("COPD") have done so when significant additional circumstances provided evidence of extraordinary and compelling circumstances. *See, e.g., United States v. Phillibert*, 557 F. Supp. 3d 456 (S.D.N.Y. 2021) (ordering compassionate release of defendant during COVID-19 pandemic who was obese, had been denied use of his inhaler despite suffering from COPD, had contracted COVID-19 while incarcerated, and had served over 85% of his sentence); *United States v. Watts*, No. 92-CR-767, 2023 WL 35029 (E.D.N.Y. Jan. 4, 2023) (ordering compassionate release of defendant who had served over 30 years of a 92 year sentence resulting from the former "stacking provision" of 18 U.S.C. § 924(c), because of age and health risks including COPD).

2

Regarding the second requirement of section 1B1.13(b)(1)(C)—that "long-term or specialized medical care [] is not being provided"—Radulescu asserts that the Bureau of Prisons is not providing adequate medical care, including by causing unnecessary delay in his receipt of medical attention. (ECF No. 1498 at 5–11.) He has submitted more than 70 pages of BOP medical records to support his contentions. The records reflect, to his credit, that Radulescu is an active participant in his medical care, with frequent interaction with the medical staff on issues ranging from COPD and asthma to a runny nose (ECF No. 1498-1 at 6), gastric reflux (*Id.*), and an ankle injury (ECF No. 1498-2 at 29–31). In fact, the BOP has provided—and continues to provide—significant, rather constant, medical care to Radulescu. (*See* ECF No. 1498 at 40–74; ECF No. 1498-1 at 1–11, 41–52; ECF No. 1498-2 at 24–31.) This care includes multiple medical appointments with BOP staff members, including medical doctors, the prescription of various medications, as well as referrals to outside medical specialists for consultations and tests, including visits with a pulmonologist. Radulescu was screened by an outside pulmonologist as recently as July 10, 2024, according to his most recent filings with the Court. (*See* ECF Nos. 1537, 1540.) Given this medical history, Radulescu has simply failed to show that "long-term or specialized medical care [] is not being provided," U.S.S.G. § 1B1.13(b)(1)(C), and he has failed to show that the BOP cannot render appropriate care.

Radulescu has also failed to meet his burden with respect to the third requirement of section 1B1.13(b)(1)(C)—that he is at "risk of serious deterioration in health or death." Radulescu contends that the risk of contracting COVID-19 is heightened due to his respiratory issues and his prescribed medication. However, not only does the federal government no longer consider COVID-19 an ongoing public health emergency, but there are no inmates at FCI Oxford that currently have COVID-19.[2] In addition, courts in this district, including this Court, have found on multiple occasions that "the risks posed by the pandemic alone do not constitute extraordinary and compelling reasons for release." *United States v. Holland*, No. 18-CR-908, 2023 WL 5702483, at *1 (S.D.N.Y. Sept. 5, 2023) (quoting *United States v. Nwankwo*, No. 12 CR 31, 2020 WL 2490044, at *1 (S.D.N.Y. May 14, 2020)); *see also United States v. Tillman*, No. 13 CR. 362, 2023 WL 355624, at *4 (S.D.N.Y. Jan. 23, 2023); *United States v. Davis*, No. 12-CR-712, 2020 WL 4573029 (S.D.N.Y. Aug. 7, 2020). Radulescu also mentions the risk of contracting "RSV or Influenza," which he contends "are at an alarming increase nationwide" according to the "latest news clips" (ECF No. 1498 at 8); but he has presented no facts to suggest that the abstract risk of contracting these viruses would "compromise the ability of the Bureau of Prisons to care for [him]," *Holland*, 2023 WL 5702483, at *1, or would "risk [] serious deterioration in health or death." U.S.S.G. § 1B1.13(b)(1)(C).

---

[2] *See* Inmate COVID-19 Data, Fed. Bureau of Prisons, https://www.bop.gov/about/statistics/statistics_inmate_covid19.jsp (last visited Sept. 16, 2024).

Radulescu also contends that his prison environment, which he states includes pests, mold, water leaks, and crowded living spaces, creates an additional health risk, especially given his "weakened respiratory system." (*See* ECF No. 1498 at 14–18.) Although the court acknowledges the difficult conditions of confinement that Radulescu describes in his motion, the bulk of his complaints pertain to conditions at the Metropolitan Correctional Center in Manhattan (now closed), and the Metropolitan Detention Center in Brooklyn, where Radulescu is no longer housed. (*See, e.g.*, ECF No. 1498-1 at 56–58.) With respect to FCI Oxford, where Radulescu is currently located, Radulescu simply has not satisfied his burden of showing that the conditions of confinement—including water leaks and mold, which Radulescu complained about and the BOP has addressed (ECF No. 1498-1 at 54–55)—are "extraordinary" for purposes of section 3582(c). *See United States v. Moss*, No. 14-CR-0147, 2024 WL 3718909, at *5 (E.D.N.Y. Aug. 7, 2024).

Radulescu's argument pursuant to U.S.S.G. § 1B1.13(b)(4), which applies to victims of abuse, is equally unavailing. (*See* ECF No. 1498 at 15.) Radulescu's single, fleeting reference to the Prison Rape Elimination Act and his oblique reference to a hearing utterly fail to meet section 1B1.13(b)(4)'s specific requirements; namely, that the abuse must either involve a "sexual act" or result in "serious bodily injury," and "must be established by a conviction in a criminal case, a finding or admission of liability in a civil case, or a finding in an administrative proceeding, unless such proceedings are unduly delayed or the defendant is in imminent danger." U.S.S.G. § 1B1.13(b)(4).

Radulescu also contends that his rehabilitation record during his incarceration constitutes an extraordinary and compelling reason warranting a reduction in his sentence. *(See* ECF No. 1498 at 22–23; ECF No. 1498-3; ECF No. 1529 at 7.) While Radulescu's efforts at rehabilitation through taking numerous education courses while incarcerated (*see* ECF No. 1498-3 at 10-11) are commendable, "rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason" to impose a sentence reduction. U.S.S.G. § 1B1.13(d); *see also* 28 U.S.C. § 994(t). Moreover, "a productive institutional record while incarcerated is what is expected, and is not a basis for a sentence reduction here." *United States v. Baptiste*, No. 15-CR-854, 2024 WL 3425818, at *2 (S.D.N.Y. July 16, 2024) (internal citation and quotation marks omitted).

In sum, Radulescu has not shown that his health conditions or other circumstances present extraordinary and compelling reasons warranting compassionate release, whether considered in isolation or in combination with each other.

4

### II. The Section 3553(a) Factors Do Not Weigh in Favor of a Sentence Reduction

Radulescu's motion also fails because the factors set forth in 18 U.S.C. § 3553(a) do not weigh in favor of a sentence reduction. Radulescu came to the United States from Romania in 2014 specifically to engage in ATM skimming. He became a leader of a major international ATM skimming and money laundering organization. Ultimately, 30 individuals, including Radulescu, were indicted for a variety of crimes arising out of this ATM skimming conspiracy. Over the course of several years, Radulescu employed highly sophisticated methods to obtain victims' debit card numbers and personal identification numbers at ATMs, including by purchasing and assembling skimming equipment to capture that personal information, scoping out locations and organizing teams to carry out skimming attacks, and installing and later removing skimming equipment from ATMs. Radulescu and others in the organization then manufactured fraudulent debit cards that bore this stolen information and used those cards to fraudulently withdraw almost $9,000,000 from the victims' bank accounts. (ECF No. 1362 at 35.) Radulescu himself compromised over 3,000 ATM accounts. (ECF No. 1362 at 22.)

Radulescu ultimately pled guilty to committing access device fraud, conspiring to commit access device fraud, and conspiring to commit wire fraud and bank fraud. In addition, he went to trial and was convicted by a jury of aggravated identity theft. Nonetheless, Radulescu's sentence of 100 months was considerably below the Sentencing Guidelines range of 192 to 234 months. (ECF No. 1362 at 26.)

The section 3553(a) factors include "the nature and circumstances of the offense and the history and characteristics of the defendant," as well as "the need for the sentence imposed . . . to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;" "to afford adequate deterrence to criminal conduct;" and "to protect the public from further crimes of the defendant." 18 U.S.C. § 3553(a)(2)(A). Radulescu's offenses were exceedingly serious. Granting Radulescu's motion at this time would neither reflect the seriousness of the offenses, promote respect for the law nor provide just punishment as required under section 3553(a).

### III. Conclusion

Radulescu has neither demonstrated that "extraordinary and compelling reasons" justify a sentence reduction nor has he shown that the factors set forth in 18 U.S.C. § 3553(a) weigh in favor of a reduction in his sentence. Accordingly, his motion for a sentence reduction is denied.

The Clerk of Court is directed to mail a copy of this Opinion & Order to Alexandru Radulescu (#87932-054), FCI Oxford, Federal Correctional Institution, P.O. Box 1000, Oxford, Wisconsin 53952.

Dated: New York, New York
September 16, 2024

SO ORDERED:

*Sidney H. Stein*

Sidney H. Stein, U.S.D.J.